IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

M2M SOLUTIONS LLC, :
　　　　　　　　　　　　　　　　　　　 :
　　　　Plaintiff, :
　　　　　　　　　　　　　　　　　　　 :
　　　　v. : C.A. No. 12-034-RGA
　　　　　　　　　　　　　　　　　　　 :
SIMCOM WIRELESS SOLUTIONS CO., :
LTD., SIM TECHNOLOGY GROUP LTD., :
MICRON ELECTRONICS LLC, and :
KOWATEC CORPORATION, :
　　　　　　　　　　　　　　　　　　　 :
　　　　Defendants. :

## MEMORANDUM OPINION

Richard D. Kirk, Esq., Wilmington, Delaware; Marc N. Henschke, Esq., Boston, Massachusetts; Attorneys for Plaintiff M2M Solutions LLC.

George Pazuniak, Esq., Wilmington, Delaware; Peter Koziol, Esq., Boca Raton, Florida; Attorneys for Defendants Simcom Wireless Solutions Co., Ltd., Sim Technology Group Ltd., Micron Electronics LLC, and Kowatec Corporation.

April ⌊ , 2013
Wilmington, Delaware

*Richard G. Andrews*
ANDREWS, UNITED STATES DISTRICT JUDGE:

Plaintiff M2M Solutions sued Defendant Micron Electronics LLC for infringement of U.S. Patent Nos. 7,583,197 and 8,094,010. Pending is Micron's Rule 12(b) motion to dismiss for lack of personal jurisdiction, improper venue, insufficient service, and failure to state a claim. (D.I. 15).[1] M2M argues that it has met the requirements of Rule 12(b) and at a minimum should be allowed to take jurisdictional discovery. Because the Court finds that M2M failed to make a prima facie case for personal jurisdiction, M2M's request for jurisdictional discovery is denied and Micron's motion to dismiss is granted.

## JURISDICTIONAL FACTS

The patents-in-suit claim a technology related to "machine-to-machine" communications. M2M alleges that Micron sells and offers for sale infringing products throughout the United States. (D.I. 6, ¶ 7). The accused products are described as "wireless modules and related devices designed and intended for use in machine-to-machine communications." (*Id.* at ¶¶ 11, 13). Micron is a Florida LLC with United States locations in Delray Beach, Florida, and Peoria, Illinois. (D.I. 16, Exh. A at ¶ 7; D.I. 18, Exh. D). Micron admits that it sells products that "could be described as Machine to Machine ("M2M") wireless communications modules." (D.I. 16, Exh. A at ¶ 7). Micron, however, has no physical presence, employees, or third-party distribution network in Delaware. (*Id.* at ¶¶ 5-6, 10). Micron does have a web-site accessible to Delaware residents. (D.I. 18, Exh. C). On this web-site, Micron markets itself as the "Global Distributor for Simcom Wireless Solutions." (*Id.*).[2] Micron further characterizes itself as "one of the world's fast [sic] growing value-added distributors of semiconductors, electronics

---

[1] Micron's co-defendants do not join the motion.
[2] Simcom Wireless Solutions is one of Micron's co-defendants. (D.I. 6).

1

components, RF devices, [and] embedded subsystems from leading manufactures [sic]. Serving customers in Asia, North America and Europe, MICRON markets and adds value to these products." (D.I. 18, Exh. C). Micron's web-site provides a toll-free number and allows users to view product listings, but does not allow for direct product ordering. (D.I. 18, Exh. J). The web-site also states that Micron's "Short Term Objectives...are to increase activity in all regions (North America, Latin America, Europe etc.)." (D.I. 18, Exh. J). Micron lists the following national corporations as a few of its "key customers:" Tyco Industry, Honeywell Security, T-Mobile, and AT&T. (D.I. 18, Exh. E).

Micron provided two declarations from its managing member, Ping Cheng. (D.I. 16, Exh. A; D.I. 20-1). Mr. Cheng states that Micron has never sold any electronics or machine to machine wireless communication modules in Delaware. (D.I. 16, Exh. A at ¶ 8). He also states that Micron does not use third-party distributions networks to sell or offer to sale products to Delaware residents. (*Id.* at ¶ 10). Mr. Cheng further states that Micron has never transacted with any of the customers listed on its web-site in Delaware. (D.I. 20-1, ¶ 6). Finally, Mr. Cheng states that Micron has no records or knowledge of any accused product entering Delaware. (*Id.* at ¶ 12). M2M provides no evidence contradicting Mr. Cheng's declarations.

## DISCUSSION

Micron argues that M2M has failed to make a prima facie case for personal jurisdiction. Accordingly, M2M should be denied jurisdictional discovery and the case must be dismissed. M2M disagrees, arguing that it has provided a sufficient basis to deny the motion, or at the very least to open jurisdictional discovery. It is the plaintiff's burden to prove the existence of personal jurisdiction over the defendant. *TriStrata Technology, Inc. v. Emulgen Laboratories, Inc.*, 537 F. Supp. 2d 635, 638 (D. Del. 2008). When a plaintiff confronts a Rule 12(b)(2)

2

motion without the benefit of jurisdictional discovery, it need only make a prima facie case of personal jurisdiction in opposing the motion. *See AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1360 (Fed. Cir. 2012). Should there still be a question as to jurisdiction over the defendant, jurisdictional discovery should be taken. *See id.*

For personal jurisdiction to exist over a nonresident, two requirements, one statutory and one constitutional, must be satisfied. First, a federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state. Fed. R. Civ. P. 4(e). Second, the exercise of jurisdiction must comport with the due process clause of the United States Constitution. *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement,* 326 U.S. 310, 315 (1945). A plaintiff meets the constitutional requirement by proving that the defendant has sufficient contacts with the forum state. This can be done by proving the existence of either general or specific jurisdiction. General jurisdiction arises when a defendant maintains "continuous and systematic" contacts with the forum state, even when the cause of action has no relation to those contacts. *AFTG-TG,* 689 F.3d at 1360. Specific jurisdiction exists in a suit arising out of or relating to the defendant's actual contacts with the forum. This entails a three-part test: (1) whether the defendant purposefully directs activities at the forum's residents; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair. *Id.*

The Delaware long-arm statute extends to the full extent of the due process clause. *LaNuova D & B, S.p.A. v. Bowe Co., Inc.*, 513 A.2d 764, 768 (Del. 1986). Delaware law, however, does not teach that the statutory and constitutional steps should be collapsed into a single analysis. *Hercules Inc. v. Leu Trust & Banking (Bahamas) Ltd.,* 611 A.2d 476, 483 (Del.

3

1992); *see Carsanaro v. Bloodhound Technologies, Inc.*, ---A.3d----, 2013 WL 1104901, *8 (Del. 2013) (analyzing the statutory and constitutional requirements separately). Although, as a practical matter, it may make no difference in the result, the Court must independently analyze the two requirements. The Court will thus examine the application of the long-arm statute, and then turn to the constitutional analysis should it be necessary. The Delaware long-arm statute is provided as follows:

> (c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
>
>> (1) Transacts any business or performs any character of work or service in the State;
>> (2) Contracts to supply services or things in this State;
>> (3) Causes tortious injury in the State by an act or omission in this State;
>> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;
>> (5) Has an interest in, uses or possesses real property in the State; or
>> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

10 Del. C. § 3104(c). Sections 3104(c)(1-3), (5), and (6) have been interpreted as specific jurisdiction provisions, while § 3104(c)(4) confers general jurisdiction. *Devicor Medical Products, Inc. v. Biopsy Sciences, LLC*, 2013 WL 486638, *5 (D. Del. Feb. 7, 2013). As M2M does not allege that Micron is subject to general jurisdiction, nor does it allege that Micron has real property or entered into insurance or surety contracts in Delaware, §§ 3104(c)(4-6) are not relevant. Delaware state courts have construed the long-arm statute liberally to confer jurisdiction to the maximum extent possible in order to "provide residents a means of redress

4

against those not subject to personal service within the State." *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1156-57 (Del. Super. 1997).

Under the relevant specific jurisdiction provisions of the long-arm statute, M2M must show one of the following in relation to its infringement allegations: (1) Micron transacted business or performed work in Delaware; (2) Micron contracted to supply services or things in Delaware; or (3) Micron caused tortious injury by an act or omission in Delaware. To meet this burden, M2M relies heavily on Micron's web-site. The web-site contains public expressions of intent to serve the entirety of North America along with a toll-free phone number. M2M argues that this makes clear Micron's intent to expand and develop business in the United States as a whole, with no exclusions as to the state of Delaware. M2M also refers to Micron's customer listings of nationwide service providers such as T-Mobile and AT&T, which are companies with retail stores located in Delaware. M2M argues that this provides the inference that Micron's accused products have entered Delaware markets. According to M2M, these facts provide reason to conclude that harm has occurred in Delaware, and at the very least reason to open jurisdictional discovery. In response to these arguments, Micron provides a declaration maintaining that it has never sold any products to Delaware customers, has never done any business in Delaware, knows of no products currently present in Delaware, and maintains no third-party distributors in Delaware. M2M does not contradict these assertions.

M2M fails to meet its burden. Although the Amended Complaint does allege that Micron infringed the patents-in-suit by "making, using, offering for sale, and/or selling within the United States, and/or importing into the United States, SIMCom's M2M wireless module products," none of these allegations are aimed at Delaware in particular, and such "bare formulaic accusation[s]" in any event are insufficient to establish personal jurisdiction. *AFTG-TG*, 689

5

F.3d at 1365. M2M provides scant facts showing actual contacts between Micron and the state of Delaware. M2M does point to the product listings and toll-free phone number found on Micron's web-site. Micron's web-site, however, does not allow actual direct purchasing of the listed products, as there is no ordering mechanism or pricing information listed.[3] There is further no evidence that any Delaware resident ever contacted Micron. Because no Delaware resident used the web-site to directly order an accused product, M2M's argument that the web-site establishes jurisdiction is effectively undermined. The mere fact that a web-site is accessible to forum residents does not by itself indicate sufficient contacts with the forum. *Trintec Industries, Inc. v. Pedro Promotional Products, Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005). At best, the web-site information can be understood as an invitation to deal, but it is a basic precept of contract law that an invitation to deal is not an "offer for sale." *See Mesaros v. United States*, 845 F.2d 1576, 1581 (Fed. Cir. 1988) (citing Williston, *A Treatise on the Law of Contracts*, § 27 (3rd ed. 1957)) (an advertisement for the sale of goods is not an offer to contract). An on-line invitation to deal does not show that Micron entered a contract, transacted business, or caused tortious harm in Delaware.

M2M also points to Micron's general statements that it intends to serve North America, which naturally includes Delaware. The Court does not view Micron's aspirations to serve the North American market as a whole as important to the jurisdictional analysis. Micron may indeed yearn for the day that every state and territory of the Union is flooded with its machine to

---

[3] Although the Federal Circuit has not explicitly embraced the so-called *Zippo Manufacturing* test, *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), which adopts the position that a highly-interactive, transaction oriented (as opposed to a passive) web-site may leave a defendant subject to personal jurisdiction where that site is accessible, it has indicated that the interactivity of a web-site is relevant to the personal jurisdiction analysis. *See Trintec Industries, Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005). As the Micron web-site does not allow for direct ordering, it falls toward the "passive" end of the *Zippo Manufacturing* spectrum.

6

machine communication modules. These unfulfilled desires, however, do nothing to show that Micron transacted business, entered a contract, or caused tortious harm in Delaware. The Cheng declarations further weaken M2M's case, as the Court need only accept M2M's **uncontroverted** allegations as true. *Autogenomics, Inc. v. Oxford Gene Technology Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009). The Cheng declarations state that Micron sold no products to Delaware customers, does not employ third party distributors that market products in Delaware, and is not aware of any products entering the Delaware market. This severely undercuts M2M's case for personal jurisdiction.

M2M also argues that Micron maintains business relationships with several national companies, some having retail stores located in Delaware. According to M2M, this suggests that Micron's products and services are sold or supported within Delaware, and discovery is needed to determine the extent of Micron's contacts with the state. It is a tenable theory under the Delaware long-arm statute that Micron may be subject to personal jurisdiction for placing infringing products in the "stream of commerce." *Commissariat a L'Energie Atomique v. Chi Mei Optoelectronics Corporation*, 395 F.3d 1315, 1320 (Fed. Cir. 2005). M2M, however, does not provide the facts to back the theory up, as its allegations are completely speculative. It would seem that an absolute minimum requirement of the "stream of commerce" test is the allegation that an infringing product has actually entered the market of the forum state. *See AFTG-TG, LLC*, 689 F.3d at 1365 (finding no personal jurisdiction under a "stream of commerce" theory where plaintiff failed to identify sales of infringing products in forum). M2M does not make this allegation, instead providing only speculation that infringing products may have possibly made their way to Delaware due to Micron's business with entities having a

7

Delaware presence. M2M's failure to allege that a single Micron product has actually entered the Delaware market is fatal to its "stream of commerce" theory.

The two patent cases M2M cites do nothing to change this result. The first is *Trintec Industries*, 395 F.3d at 1275. In *Trintec*, the Federal Circuit reversed the district court for refusing to allow jurisdictional discovery. *Id.* There, it was undisputed that the defendant used a third party distributor to sell products in the forum state, although it was unknown whether those sales included the accused products. *Id.* at 1282. The defendant also maintained an interactive website to sell its products. *Id.* at 1281. It was unknown how frequently customers in the forum used the web-site. *Id.* Finally, the defendant had participated in at least two trade shows in the forum, although the extent of business actually conducted at these shows was unknown. *Id.* at 1282. The Federal Circuit ordered jurisdictional discovery to clear up these unknowns. *Id.* The allegations of the instant case do not present similar uncertainties. Here, there is no indication that any Micron products have ever entered Delaware. Micron uses no third party distributors to market its products in the region. There is thus no established likelihood that accused products are present in the state. Moreover, it is not even possible to buy products through Micron's web-site; there is thus no pending question of whether Delaware customers entered on-line transactions with Micron. Finally, Micron personnel did not attend any trade shows or do any sort of business networking whatsoever in Delaware. For these reasons, *Trintec* does not compel the Court to open jurisdictional discovery.

M2M also cites *Commissariat a L'Energie Atomique*, 395 F.3d at 1320. In that case, the Federal Circuit reversed the district court for refusing to allow jurisdictional discovery. The plaintiff submitted evidence showing that the defendant's products were incorporated into devices and then sold in Delaware. *Id.* The flow of these products into Delaware was described

8

as "regular and anticipated," or sufficient to satisfy Justice Brennan's more lenient version of the "stream of commerce" theory. *Id.* at 1321.[4] The Federal Circuit held that jurisdictional discovery was necessary to build a more robust record for determining whether the defendant was subject to personal jurisdiction. *Id.* at 1322. Here, there is zero evidence that any Micron products have entered the Delaware market, let alone evidence suggesting a "regular and anticipated" flow of products into the state. *Commissariat a L'Energie Atomique* thus does not compel the Court to open jurisdictional discovery.

M2M has thus failed to make a prima facie case of personal jurisdiction according to the specific jurisdiction provisions of the Delaware long-arm statute. For this reason, Micron's motion to dismiss for lack of personal jurisdiction is granted, and M2M's request for jurisdictional discovery is denied.

An appropriate order will be entered.

---

[4] The Federal Circuit has thus far declined to choose between the Justice Brennan and Justice O'Connor versions of the "stream of commerce" theory of personal jurisdiction. *See AFTG-TG, LLC*, 689 F.3d at 1367.

9